## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GREGORY J. TURLEY, #N08083, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08–cv–377–SCW |
| | ) | |
| GARY CONDER, BRIAN FAIRCHILD, SANDRA FUNK, DONALD HULICK, JOHN KELLERHOUSE, CRAIG MITCHELL, TYONE MURRAY, DAN OHLAU, ANTHONY RAMOS, DAVID REDNOUR, GARY REDNOUR, and BETSY SPILLER, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I.  Introduction

Before the Court is a Motion for Summary Judgment (Docs. 134 & 135) filed by Defendants Gary Conder, Brian Fairchild, Sandra Funk, Donald Hulick, John Kellerhouse, Craig Mitchell, Tyone Murray, Don Ohlau, Anthony Ramos, David Rednour, Gary Rednour, and Betsy Spiller.  Specifically, Defendants Kellerhouse, Spiller, Murray, and Hulick argue that Plaitniff is entitled to summary judgment on Plaitniff's claim that they failed to lower security level to medium.  Further, Defendant Fairchild argues that Plaintiff lacks evidence that he retaliated against him.  All Defendants also argue that they are entitled to summary judgment on Plaintiff's claims that he was denied a transfer request and that he was subject to a cell shakedown in retaliation for filing grievances.  Plaintiff has filed a Response in opposition to Defendants' motion (Doc. 155).  In response, Defendants seek to strike that Response as it contains hearsay (Doc. 160).  Plaintiff has filed a Response to their motion to strike (Doc. 161).  Based on the following, the Court **GRANTS IN PART AND DENIES IN PART**

Defendants' motion for summary judgment (Docs. 134 & 135).

## II.  Background

Defendants' summary judgment motion alleges that Defendants are entitled to summary judgment because Plaintiff has failed to produce evidence that any of the Defendants retaliated against him in violation of his First Amendment rights.  Specifically, Defendants Kellerhouse, Spiller, Murray, and Hulick argue that Plaintiff has failed to offer any evidence that they retaliated against him by failing to lower his security level.  Defendants note that the only evidence Plaintiff offers is his mere disagreement with his current security classification.  Further, Defendant Fairchild argues that the only evidence Plaintiff has offered against him is that his girlfriend reported a death threat on Plaintiff and he believes that Defendant Fairchild did not follow proper procedure in handling that threat.  Defendants also argue that they are entitled to summary judgment on Plaintiff's claims regarding his transfer and cell shake down because Plaintiff lacks evidence as to his transfer and he did not see the cell shake down.  In support of their motion, Defendants have offered Plaintiff's deposition as an exhibit.  Plaintiff has filed a Response in opposition and has provided several exhibits.  The following factual background is derived from both Plaintiff and Defendants' briefs and exhibits.

Plaintiff claims that Defendants retaliated against him by refusing to lower his security level stems from an event which occurred in 2007.  On February 2, 2007, Defendant Spiller placed a memo in Plaintiff's file indicating that Plaintiff had not escaped from a state prison and that he had instead escaped from Crawford County courtroom in 1980, a note which corrected an apparent mistake created in 2000 in his file which Plaintiff alleged caused him to be labeled at maximum security and high escape risk (Doc. 123 at ¶ 34; Doc. 1 Ex. D).  In response to that change, Plaintiff filed a grievance on March 11, 2007 requesting that his security and escape level be returned to medium and moderate, respectively (Doc. 1 Ex. E).  That grievance was ultimately denied as the staff were in the process of

reclassifying Plaintiff (*Id.*). His escape risk was subsequently lowered to medium (Doc. 123 at ¶¶ 35-37). Defendants denied that they ever changed his security level and that he is at a medium security rating and that any change was due to clerical mistake (*Id.* at ¶¶39-40). They also deny that Plaintiff had a maximum security rating (*Id.* at ¶ 41). However, Defendants now maintain that Plaintiff's security level is maximum due to the remainder of time left on his sentence and Plaintiff maintains that he is at a maximum security level (Doc. 160; Doc. 155 Ex. B; Doc. 135-1 at p. 7)). Documents presented by Plaintiff indicate that he is still labeled as a medium security level (Doc. 155 Exs. B & C; Doc. 135-1 at p. 20).

Plaintiff's Complaint also alleges that Defendants Kellerhouse, Spiller, Ohlau, Murray, Conder, Ramos, Hulick, and Fairchild retaliated against him by denying him a transfer to another prison. Plaintiff had requested a transfer to Hill Correctional Center on 12/9/06 but was ultimately denied a transfer due to time left on his sentence (Doc. 1 Ex. F).[1] While Plaintiff acknowledges that he believes the transfer coordinator, Defendant Funk, was being honest in her denial, he believed that he was entitled to a transfer as he saw other inmates with more severe disciplinary histories being transferred and he felt, given his history, he would qualify for transfer as well (Doc. 135-1 at pp. 37-39). He also alleged that he wrote a grievance on various things including staff problems (*Id.* at pp. 40-41).

Plaintiff also alleges that Defendants Mitchell, David Rednour, Gary Rednour, Hulick, Ramos, Conder, Cowan, and Fairchild retaliated against him by conspiring to shakedown his cell, filing a disciplinary report against him, and sending Plaintiff to segregation for a wrongfully charged violation of Rule 211. This claim stems from a shakedown of Plaintiff's cell which occurred on March 20, 2007. On March 20, Defendants admit that Defendants Mitchell and Gary Rednour conducted a shakedown

---

[1] In Plaintiff's deposition, he testified that he had requested to be transferred to Illinois River as it was a secure medium facility, a step down from Menard (Doc. 135-1 at p. 37).

of Plaintiff's cell and only Plaintiff's cell property was searched (Doc. 123 at ¶¶ 67-68).   Neither
Plaintiff's cellmate nor any other inmates in general population were searched at that time (*Id.*).   Plaintiff
learned of the shakedown from a gallery worker as Plaintiff was in the showers during the time of the
search (Doc. 135-1 at pp. 44-45).

       Upon Plaintiff returning to his cell, Mitchell and Gary Rednour allegedly returned to his
cell and Rednour informed Plaintiff that he thought Plaintiff was going to go to segregation (*Id.* at p.
46).   Plaintiff was informed that he had documentation in his possession which belonged to another
inmate, a violation of Rule 211 (*Id.* at p. 47).   He was told to pack up his stuff and he was moved to
segregation by Defendant Mitchell (*Id.* at pp. 47, 49).   He received a disciplinary report for having a
grievance belonging to Inmate James Patterson sometime after he was sent to segregation (*Id.*; Doc. 1
at Ex. G).   Defendants admit that when Mitchell and Rednour searched Plaintiff's cell they found the
grievance in a legal folder labeled *Turley v. Bedinger* (Doc. 123 at ¶ 73).   Plaintiff argued before the
Adjustment Committee that he was not in violation of Rule 211 because the grievance was an exhibit
in a lawsuit he had filed (Doc. 1 Exs. H & I).   Defendant Craig Mitchell and a David Johnson found
Plaintiff guilty of Rule 211, possession of unauthorized personal information, finding that Plaintiff had
failed to provide evidence that the grievance from Inmate Patterson was an "exhibit" that was attached
to his lawsuit (Doc. 1 Ex. I).   Plaintiff states that Mitchell was not at the Adjustment Committee hearing
and that Lt. Broshears chaired the hearing, not Mitchell (Doc. 135-1 at p. 54).   The Menard Orientation
Manuel indicates that any person who initiated an allegation which serves as the basis for a disciplinary
report, conducted an investigation, witnessed, or is otherwise not bias cannot serve on the Adjustment
Committee hearing (Doc. 1 Ex. J).   Defendant Hulick approved the finding and Plaintiff was sentenced
to two months segregation (Doc. 1 Ex. I).   Prior to these events, Plaintiff had submitted four grievances
over the course of nine days prior to the shakedown including an "inflammatory" emergency grievance

directed to the Warden the day prior to the shakedown (Doc. 135-1 at pp. 50-52).

### III.  Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted)(citing FED.R.CIV.P. 56(a));** *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* **422 F.3d 603, 607 (7th Cir. 2005).**.  The party seeking summary judgment bears the initial burden of demonstrating - based on the pleadings, affidavits, and/or information obtained via discovery - the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* **477 U.S. 317, 323 (1986)**.

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 250 (1986)(quoting FED.R.CIV.P. 56(e)(2)).**[2]  A fact is material if it is outcome determinative under applicable law. *Anderson,* **477 U.S. 242, 248 (1986);** *Ballance v. City of Springfield, Illinois Police Department,* **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).**  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* **477 U.S. at 248.**  "A mere scintilla of evidence in support of the nonmovent's petition is insufficient; a party

---

[2]  Rule 56 was revised in December 2010.  According to the Report of the Judicial Conference Committee on Rules of Practice and Procedure, the revisions "are not intended to change the summary judgment standard or burdens."  Judicial Conference Committee on Rules of Practice and Procedure, Report to the Chief Justice of the United States and Member of the Judicial Conference of the United States, 14 (Sept. 2009), available at: http://www.uscourts.gov/uscourts/RulesAndPolices/rules/Reports/Combined_St_Report_Sept_2 009.pdf.

will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted).

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.*; *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d at 512. Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

## IV.   <u>Analysis</u>

### A.   **Motion to Strike**

In response to Plaintiff's Responsive briefing, Defendants have filed a Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 160). Defendants seek to strike Plaintiff's responsive briefing as they allege that Plaintiff has used hearsay evidence to support some of his claims. While Rule 56 does allow a party to object to certain material presented in a supporting brief as not supported by admissible evidence, the Rule does not indicate that the appropriate remedy is to Strike the *entire* briefing, especially when Defendants have only pointed to three pieces of evidence in Plaintiff's response which they argue are either irrelevant, taken out of context, or hearsay. While the Court will consider these matters when ruling on the summary judgment motion, the Court finds that Defendant's request to strike Plaintiff's entire briefing is unfounded. Thus, the Court **DENIES** Defendants' motion to strike (Doc. 160).

**B.     Retaliation**

A prisoner has a right under the First Amendment to challenge the conditions of his confinement by filing grievances, and prison officials are not allowed to retaliate against an inmate for exercising his First Amendment Rights. *See DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000)(citing** *Babcock v. White*, **102 F.3d 267, 274-75 (7th Cir. 1996)).**  In order to establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that he was "engaged in activity protected by the First Amendment" and that he "suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009).** A plaintiff must further prove that the protected activity caused the defendant to retaliate. *See Gunville v. Walker*, **583 F.3d 979, 984 n. 1 (7th Cir. 2009) ("Until the Supreme Court's recent decision in** *Gross v. FBL Financial Serv[ices], Inc.*, **plaintiffs could prevail in a First Amendment § 1983 action if they could demonstrate that their speech was a motivating factor in the defendant's decision.  After** *Gross*, **plaintiffs in federal suits must demonstrate but-for causation unless a statute (such as the Civil Rights Act of 1991) provides otherwise." (citing** *Gross v. FBL Fin. Servs., Inc.*, **- - U.S. - - , 129 S. Ct. 2343, 174 L.E.2d 119 (2009);** *Fairley v. Andrews*, **578 F.3d 518, 525-26 (7th Cir. 2009))).**  At the summary judgment stage of proceedings, "mere speculation" on the plaintiff's part is insufficient; instead, a plaintiff must come forward with some evidence of causation. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, **544 F.3d 752, 757 (7th Cir. 2008)**.

Plaintiff also alleges in his Complaint that the acts of retaliation taken against him were part of a larger conspiracy by the Defendants to retaliate against him.   A claim of civil conspiracy is actionable but is not an independent basis for liability under § 1983. *See Lewis v. Washington*, **300 F.3d 829, 831 (7th Cir. 2002);** *Smith v. Gomez*, **550 F.3d 613, 617 (7th Cir. 2008)**.  In order for

liability to attach to a conspiracy claim, the "defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe*, **93 F.3d 418, 422 (7th Cir. 1996)**. Here, Plaintiff argues that Defendants conspired to retaliate against him for filing grievances by failing to lower his security rating, denying him a transfer to another prison, and performing a shakedown of his cell property, issuing him a disciplinary ticket, and sending him to segregation. In order to succeed on his conspiracy to retaliate claim, Plaintiff must demonstrate: (1) that the defendants had an express or implied agreement to deprive him of his constitutional rights, and (2) he was deprived of his constitutional rights by defendants' overt actions in furtherance of the agreement. *Williams v. Seniff*, **342 F.3d 774, 782 (7th Cir. 2003);** *Scherer v. Balkema*, **840 F.2d 437, 442 (7th Cir. 1988)**.

### 1.    Security Rating

Plaintiff's Complaint alleges that Defendants Kellerhouse, Spiller, Murray, Hulick, and Fairchild conspired to retaliate against him by refusing to change his security classification from high to medium. Defendants argue that they are entitled to summary judgment on Plaintiff's security rating claim because Plaintiff's only evidence that Defendants retaliated against him is that Plaintiff disagrees with his current security classification and that he believes that Defendants have kept his security level at maximum because they dislike him. Plaintiff, however, argues that he alleges that Defendants refused to correct his security classification level after they corrected his escape classification risk in 2007.

Here, the Court finds that Plaintiff has offered enough evidence to create an issue of fact for trial. Plaintiff alleges that on February 2, 2007, Defendant Spiller corrected information in Plaintiff's Master File indicating that he had escaped from prison (Doc. 1 Ex. E). In response, Plaintiff filed a grievance on March 11, 2007 requesting that his escape risk be changed and his security level be changed to medium (*Id.*). Defendants admit that Plaintiff filed a grievance and that the grievance was ultimately denied because his escape risk classification was corrected (Doc. 123 at ¶¶ 35, 37, 37). As

to the security rating, Defendants have stated in their Answer that Plaintiff has been classified as a medium security level and that no change has ever been made to his security level (*Id.* at ¶¶ 36 & 39).[3] However, in Defendants' motion to strike Plaintiff's response to the summary judgment motion, Defendants maintain that while his escape risk was corrected, his security risk has remained at maximum because of the time he has left to serve (Doc. 160 at p.2). Defendants' summary judgment motion also alleges that his security level is at maximum (Doc. 135 at p. 5). Clearly, there is a dispute of fact as to whether Plaintiff has a maximum or medium security rating, a point which Defendants even dispute. In their Second Amended Answer, Defendants contend that he has a medium security, that is the level he should be at, and that he is not at a maximum level, yet they now argue that he is labeled *maximum*. Further, Plaintiff has offered evidence that he is currently, or as of October 5, 2011, at a medium security level, yet Defendants maintain he is at a maximum rating (Doc. 155 Ex. B).[4] There is also nothing in the record to indicate, as Defendants allege, that Plaintiff is at a maximum security rating due to the time left on his sentence (Doc. 160 at p.2 (citing to Doc. 155 Ex. B)).[5] Plaintiff acknowledges that discovery he received indicated he scored as medium security, but that someone has changed his final score to maximum without any explanation (Doc. 135-1 at p. 20). The Court, therefore, finds that there is an issue of fact in this case as to what security rating level Plaintiff has, what level he is entitled

---

[3] In fact, Defendants deny that Plaintiff has a maximum security rating and state that any change in his rating is due to clerical error (Doc. 123 at ¶¶ 40-41).

[4] Plaintiff's reclassification documents from November 19, 2003 indicate that his security designation code was at maximum although it also indicates that his assessed security designation was medium (Doc. 155 Ex. C). However, another exhibit that appears to be the Illinois Department of Corrections Transfer Coordinator Review indicates that Plaintiff is at a medium security level (Doc. 155 Ex. B).

[5] It is unclear from Doc. 155 Ex. B, which both Plaintiff and Defendants cite to, why Plaintiff would be at a maximum security rating. Nothing in Ex. B indicates the rationale for Plaintiff being placed at a maximum security rating.

to, and the rationale behind that rating, none of which is clear from the exhibits before the Court. Therefore, the Court must **DENY** summary judgment as to Defendants on this claim as there are several issues of material fact which must be resolved at trial.

      2.      **Transfer**

      Defendants also argue that they are entitled to summary judgment on Plaintiff's claim that Defendants retaliated against him by refusing to transfer him to a lower security level prison because the only evidence that Plaintiff has is that other inmates with medium security levels were transferred.[6] Plaintiff's Complaint alleges that Defendants Kellerhouse, Spiller, Ohlau, Murray, Conder, Ramos, Hulick, and Funk retaliated against him by denying him consideration for a transfer to a Level 2 facility. Specifically, Plaintiff alleges that he learned that other prisoners were being transferred and that he then consulted with Defendant Kellerhouse, his counselor about being transferred, and Defendant allegedly commented that Plaintiff was a known troublemaker and would not be transferred. In his Response, Plaintiff only states that Defendants' reasoning behind their denial, that the time left to serve on his sentence prevents him from being transferred, is evidence of retaliation because other inmates, with far longer sentences and of higher security risk, have been transferred and that he is more "worthy" of a transfer.

      However, Plaintiff has failed to offer any evidence that Defendants have failed to transfer him out of retaliation for Plaintiff filing grievances. Plaintiff has failed to offer any evidence to show a retaliatory motive, nor has Plaintiff even offered evidence to show that the Defendants responsible for Plaintiff's transfer denial had knowledge of Plaintiff's various grievances. Plaintiff's only evidence is that other inmates with lengthier sentences were transferred, yet he was denied a transfer

---

[6] Defendants acknowledge that several inmates mentioned in Plaintiff's Complaint, including Thomas Odle, Renaldo Hudson, Glen Jones, and Jeff Bartik, were transferred to reduced security prisons even though they had natural life sentences (Doc. 123 at ¶ 63).

due to the time left on his sentence.  Plaintiff states that he saw inmates with more severe disciplinary records transferred and he believed if they qualified for a transfer, he should also qualify (Doc. 135-1 at pp. 37,39).  However, there is no evidence in the record to suggest that the denial was done out of retaliation or even that the named Defendants have any authority over which prisoners are transferred. Plaintiff has also failed to offer evidence that Defendants' reasoning for denying his transfer was false or a mere pretense.  Plaintiff's grievance and the responses to his grievance indicate that transfers are based on various criteria and that he was denied a transfer due to the time left on his sentence (Doc. 1 Ex. F).  Plaintiff vaguely states that he believed his denial was due to grievances he filed on various issues including staff problems, but he never points to a specific grievance or the dates of those grievances or any evidence that those who denied his transfer had any knowledge of his grievances (Doc. 135-1 at pp. 40-41).  *See Dace v. Smith-Vasquez*, **658 F. Supp. 2d 865, 881 (S.D.Ill. 2009) (citing** *Stagman v. Ryan***, 176 F.3d 986, 1001 (7th Cir. 1999) (suspicious timing alone does not provide an inference of knowledge));** *Bivens v. Trent***, 591 F.3d 555, 559 n. 2 (7ᵗʰ Cir. 2010).**

Further, Plaintiff makes much of the fact that other inmates with worse prison histories were transferred and he was not.  However, Plaintiff himself noted that not every inmate with a medium security rating is transferred to a lower security facility.  In fact, when arguing for a medium security rating, Plaintiff noted that even if he "was placed back to his previous medium security status, this does not mean that he cannot be in a maximum security prison, as there are many prisoners who reside at Menard C.C. with medium security ratings" (Doc. 155 at p. 6).  Plaintiff cannot in one breath argue that he does not have to be transferred based on security ratings and in the same breath argue that he should be transferred based on his security rating.  His argument for a change in his security rating refutes his argument that he was retaliated against by being denied a transfer as he acknowledges that his security level does not necessarily mean that he will be granted a transfer.  As Plaintiff notes, there are many

medium security prisoners at Menard and he will not necessarily be transferred based on his security rating or prior history. Additionally, if his security level was "high" as the parties appear to agree, he would not have been eligible for a transfer in any event. Therefore, as Plaintiff has offered no evidence that Defendants refused to transfer Plaintiff out of retaliation, the Court **GRANTS** Defendants' Kellerhouse, Spiller, Ohlau, Murray, Conder, Ramos, Hulick, and Funk motion for summary judgment.

### 3.    Cell Shakedown, Disciplinary Report, and Placement in Segregation

Plaintiff's Complaint also alleges that Defendants Mitchell and David Rednour performed a shakedown of his cell in retaliation for his writing grievances at the direction of Defendants Gary Rednour, Hulick, Ramos, Conder, Cowan, and Fairchild. Plaintiff further alleges that Gary Rednour issued a disciplinary report because another inmate's grievance, which Plaintiff had labeled as an exhibit for one of his pending civil cases, was found to be in his possession, a charge which Plaintiff was found guilty of and sentenced to two months segregation on. Plaintiff claims that all of this was done in retaliation for his writing four grievances in the nine days prior to the shakedown of Plaintiff's cell.

Defendants argue that they are also entitled to summary judgment on Plaintiff's claim of retaliation regarding this shakedown and subsequent disciplinary ticket and placement in segregation because Plaintiff did not see who shook down his cell and does not know if his cell was the only one shaken down. Defendants also point out that he has no evidence that Defendants knew of the emergency grievance he had filed, which Plaintiff alleges led to his cell shakedown, and his only evidence that the disciplinary ticket was issued in retaliation is his own personal belief.

Here, however, the Court finds that Plaintiff has presented enough evidence to create an issue of material fact for trial. Plaintiff alleges that he was the subject of a retaliatory shakedown and

was also issued a disciplinary ticket and sent to segregation in retaliation for filing grievances.  Further, Plaintiff's Complaint alleges that Defendant Hulick misapplied IDOC Rule Infraction 211 in retaliation against Plaintiff.  Plaintiff has offered evidence that the shakedown and subsequent disciplinary report and placement in segregation was in retaliation for writing grievances.  As Plaintiff points out in his Response, while Defendants argue that Plaintiff does not know who shook down his cell, Plaintiff has offered evidence in the form of the Disciplinary Report which Defendant Gary Rednour wrote after shaking down Plaintiff's cell (Doc. 1 Ex. G).  While Plaintiff was in the shower when his cell was subjected to a shakedown, he did testify that a gallery worker informed him that Mitchell and Rednour were in his cell (Doc. 135-1 at p. 43).  Plaintiff also testified that Rednour and Mitchell returned to his cell to inform Plaintiff that he was going to segregation (*Id.* at p. 46).  Further, Defendants, themselves, admit that Defendant Mitchell participated in the shakedown as well as Defendant Gary Rednour (Doc. 123 at ¶ 73).  Clearly Plaintiff has presented evidence that Mitchell and Gary Rednour participated in the shakedown and discipline of Plaintiff.

While Defendants also argue that Plaintiff has no evidence that his cell or his cell property was the only property searched, Defendants admit in their Second Amended Answer that Plaintiff's cellmate's property was not searched and that no other cell on Plaintiff's gallery was searched (Doc. 123 at ¶ 68).  Defendants admit that only Plaintiff's cell and only Plaintiff's property in his cell was the subject of the shakedown (*Id.*).  Further, Defendant Gary Rednour did not deny that he searched only Plaintiff's property but does not recall why he shook it down (Doc. 155 Ex. F).  Defendant David Rednour also does not recall why he ordered Plaintiff's cell property to be part of a shakedown (Doc. 155 Ex. G).

From the evidence presented, there is clearly an issue of material fact as to why Plaintiff's property, and only Plaintiff's property, was part of the shakedown, and an issue of fact as to whether

it was done in retaliation. Defendant David Rednour has stated that Turley was not part of any investigation, yet the Defendants admit that Plaintiff's cell was the only one shaken down (*Id.* at ¶ 6; Doc. 123 at ¶ 68). There is no clear reasoning behind Plaintiff's cell shakedown from the record, nor have Defendants offered any evidence to explain the reasoning for the shakedown of only Plaintiff's property. Neither David Rednour nor Gary Rednour recall why they ordered or searched Plaintiff's cell. Further, Plaintiff has offered evidence that he filed at least four grievances against staff in the nine days prior to the cell search, one of which was an Emergency Grievance filed the day before the cell search (Doc. 155 Ex. G). Plaintiff state that he wrote and sent an emergency grievance to the Warden the day before the shakedown and that the Warden's mail was picked up by Gary Rednour (Doc. 135-1 at pp. 50-51). While Defendants state that they were unaware of the grievances, Plaintiff has presented enough evidence to create an issue of fact as to why Defendants searched Plaintiff's cell and whether that search was indeed in retaliation for filing grievances, given that Plaintiff filed several grievances mere days before the cell shakedown and no other explanation has been offered for the shakedown.

Plaintiff also alleges in his Complaint that he was issued a disciplinary report for having an Inmate Patterson's grievance in retaliation for filing grievances. Plaintiff alleges that the application of Rule 211 for possession of unauthorized personal information was used against him in retaliation. After the cell shakedown by Mitchell and Gary Rednour, Plaintiff was found to be in possession of an Inmate Patterson's grievance and was charged with a violation of Rule 211. He subsequently was found guilty of the violation by the Adjustment Committee and sentenced to segregation. While Defendants argue that they are entitled to summary judgment because Plaintiff's only evidence that he was retaliated against is his own personal belief, Plaintiff has, in fact, offered evidence that the subsequent disciplinary report and placement in segregation were in retaliation. Plaintiff points out that he filed several grievances in the nine days prior to the cell shakedown and subsequent disciplinary report, including an

emergency grievance filed the day before the shakedown which he alleges included inflammatory information against the Defendants (Doc. 135-1 at pp. 51-53).  Plaintiff also notes that the grievance confiscated from his cell was labeled as an exhibit for another one of his cases and thus should not have been subjected to Rule 211 and only was considered a violation in order to retaliate against Plaintiff, although the Defendants dispute this fact as Defendants Mitchell and Hulick found there to be no evidence that the document was an exhibit in the Adjustment Committee's Report (Doc. 1 Ex. I).  Defendants admit, however, that the exhibit was found in Plaintiff's *Bedinger* case file (Doc. 123 at ¶ 73).  Further, Plaintiff has offered evidence that Defendant Mitchell wrote the Adjustment Committee's Report, finding Plaintiff guilty of the offense, even though Plaintiff alleges that Defendant Mitchell was not at the hearing and could not be on the Adjustment Committee if he searched Plaintiff's cell (Doc. 1 Exs. I, J, & L; See also Doc. 135-1 at pp. 53-54 (Plaintiff testified that Lieutenant Broshears conducted the hearing even though the Final Report indicates that Defendant Mitchell and David Johnson conducted the hearing)).    Plaintiff alleges this is further evidence of Defendants' retaliatory motive.  Here, the parties dispute whether Rule 211 and Plaintiff's ultimate discipline was applied in a retaliatory manner.  Thus, the Court **DENIES** summary judgment as to Defendants Mitchell, Hulick, Gary Rednour, and David Rednour.

However, the Court notes that Plaintiff has failed to present any evidence that Defendants Conder, Cowan, Fairchild, or Ramos participated in any way in his cell shakedown and subsequent discipline.  He has failed to offer any evidence as to these four Defendants, and thus the Court **GRANTS** summary judgment as to Conder, Cowan, Fairchild, and Ramos on Defendants' motion for summary judgment as to Plaintiff's claim of retaliation for the cell shakedown and subsequent discipline.   Accordingly, the Court dismisses Conder, Cowan, Fairchild, and Ramos as to this count.

The Court also notes that Plaintiff's Complaint alleged that the retaliatory cell search also constituted a Fourth Amendment violation. While the Court's threshold Order did not acknowledge the claim, the Court previously ordered Defendants to respond to Plaintiff's claim in their Amended Complaint (*See* Doc. 89). However, to the extent that Plaintiff continues to argue that the shakedown of his cell constitutes a Fourth Amendment violation, and thus a claim independent from his retaliation claim, the Court now **DISMISSES** Plaintiff's Fourth Amendment claim as a prisoner does not have an expectation of privacy in his prison cell. *Green v. Berge*, **354 F.3d 675, 679 (7th Cir. 2004) (citing** *Hudson v. Palmer*, **468 U.S. 517, 525-26, 104 S.Ct. 3194, 3199 (1984)("Fourth Amendment proscription against unreasonable searches does not apply to the confines of the prison cell)).**

## V.  Conclusion

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (Doc. 134 & 135). The Court **GRANTS** summary judgment as to Defendants' Kellerhouse, Spiller, Ohlau, Murray, Conder, Ramos, Hulick, and Funk as to Plaintiff's claim of denying him a transfer to a lower security prison in retaliation for filing grievances. The Court further **GRANTS** summary judgment as to  Conder, Cowan, Fairchild, and Ramos on Plaintiff's claim of retaliation for the cell shakedown and subsequent discipline. However, the Court **DENIES** summary judgment as to Defendants Gary Rednour, Craig Mitchell, Donald Hulick, and David Rednour on Plaintiff's claims regarding his cell shakedown and subsequent disciplinary charge. The Court further **DENIES** summary judgment as to Kellerhouse, Spiller, Murray, Hulick, and Fairchild on Plaintiff's retaliation claim regarding his security rating.

Upon the filing of this Order, the following claims will remain for trial:

(1)     Plaintiff's claim that Defendants Kellerhouse, Spiller, Murray, Hulick, and Fairchild

retaliated against him by refusing to lower his security rating to medium.

(2)     Plaintiff's retaliation claim against Defendants Gary Rednour, David Rednour, Mitchell, and Hulick for performing a shakedown of Plaintiff's cell and disciplining him for the possession of Inmate Patterson's grievance.

Defendants Ohlau, Cowan, Conder, Ramos, and Funk are accordingly entitled to summary judgment and judgment can be entered in their favor at the close of this case.

IT IS SO ORDERED.

DATED: March 9, 2012.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge